NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY ALLIED INDUSTRIAL AND SERVE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC LOCAL 4-406, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CAMBREX, INC., et al., <br><br> Defendants. | Civil Action No.: 09-2712 (JLL) <br><br><br> OPINION |

**LINARES**, District Judge.

This matters comes before the Court on: (1) the motion of Defendants to dismiss Counts I and III of Plaintiffs' Complaint and to stay discovery and the time to answer with respect to Count II, and (2) the cross-motion of Plaintiffs to remit Count I to arbitration and stay further consideration of Counts II and III pending the outcome of the arbitration. The Court has considered the submissions in support of and in opposition to both motions and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiffs' motion is granted, and Defendants' motion is denied.

I.      BACKGROUND

Prior to 2003, the five individual plaintiffs in this case, Alexander Radomski, Daniel Picard, Kevin Finnegan, James Dolan, and Kenneth McWilliams, were employed by CasChem,

Inc. and/or Cambrex, Inc. (collectively referred to as "CasChem") at a plant in Bayonne, New Jersey. (Compl. ¶¶ 1, 4-5.) In November 2003 the Bayonne plant was sold to Rutherford Chemicals, Inc. ("Rutherford"). (Id. at ¶ 5.) Today the plant is owned and operated by Vertellus Specialties, Inc. ("Vertellus"). (Id. at ¶¶ 1, 6.)

The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy Allied Industrial and Service Workers International Union, Local 4-406 ("USW"), a representative of the individual plaintiffs in this case, is the successor of the Paper, Allied-Industrial, Chemical and Energy Workers International Union, AFL-CIO ("PACE") Local 406 (with USW collectively referred to as the "Union"). (Id. at ¶ 2.) In 1997, PACE entered into a collective bargaining agreement (the "1997 CBA") with CasChem covering the Bayonne plant union employees. (Id. at ¶ 28.) The 1997 CBA was originally effective through September 17, 2001, but "was subsequently extended through September 17, 2004, and was in effect up through [CasChem's] sale of the Bayonne Plant to Rutherford." (Id. at ¶¶ 28-29.) Both Rutherford and Vertellus entered into collective bargaining agreements with the Union that included many of the same terms as those in the 1997 CBA, including a provision covering disability pension benefits. (Id. at ¶¶ 43-46.) Thus, after the sale of the Bayonne plant by CasChem, Union employees became participants in a plan sponsored first by Rutherford and then Vertellus (the "Rutherford Plan"). (Id.)

Each of the individual plaintiffs had ten years or more of service with CasChem prior to sale of the Bayonne plant. (Id. at ¶ 48.) Each became disabled after January 1, 2007, after expiration of the 1997 CBA and after CasChem's sale of the Bayonne plant, and each are eligible for Social Security Disability benefits. (Id. at ¶¶ 51-52.) Plaintiffs Radomski, Finnegan, and

Picard are currently receiving Social Security benefits; Plaintiffs Dolan and McWilliams are not. (Id. at ¶¶ 40-41, 53.)  Plaintiffs Radomski, Finnegan, and Picard are receiving a disability pension from the Rutherford Plan covering their years of service with Rutherford and Vertellus.  (Id. at ¶ 55.)  Once they begin receiving their Social Security Disability benefits, Plaintiffs Dolan and McWilliams will also apply for disability retirement benefits from the Rutherford Plan.  (Id. at ¶ 56.)   Plaintiffs Radomski, Finnegan, and Picard also applied for a disability pension from the CasChem Plan for their years of service with CasChem, but the applications were denied.  (Id. at ¶¶ 57-58.)  Plaintiff Radomski appealed the denial, which was also denied.  (Id. at ¶ 59.)  In a letter regarding Mr. Radomski's denial, the Defendants explained that when his CasChem employment terminated, he was entitled to a Deferred Vested Benefit Plan and that, as such, he was not also entitled to a Disability Retirement Benefit. (Id.)  They also explained that, in any case, he was not entitled to a Disability Retirement Benefit "since he was not working for CasChem/Cambrex, Inc. at the time of his disability."  (Id.)  The Union sought to grieve the denial of the CasChem Plan benefits pursuant to the 1997 CBA, but grievance was unsuccessful.  (Id. at ¶¶ 69-70.)  It then sought to arbitrate the dispute, but CasChem refused.  (Id. at ¶¶ 70-71.)

      Section 2C of Exhibit D of the 1997 CBA provides: "An Employee shall be retired at his request under a disability retirement provided he is covered under the Plan with at least ten (10) years of Company service and also is eligible and receives Social Security Disability Benefits." (Id., Ex. 1, 1997 CBA, at 40.)  Article II of the 1997 CBA, "Duration of Agreement," states in part: "The Pension Plan and Group Life Insurance Plans as set forth in Exhibit 'C' of this Agreement shall be [in] effect from September 18, 1997 . . . ."  (Id. at 3.)  Article II further provides: "The provisions of [the Pension] Agreements shall be conclusive for its duration as to

all bargainable matters unless the Company and the Union mutually agree to alter, amend, supplement, enlarge or modify any of its provisions." (Id.)  Exhibit C, Section 2, provides that "the Retirement Plan for Non-Salaried Employees of CasChem Inc. (the Hourly Pension Plan) will be merged into [the] Retirement Plan for Salaried Employees of [the] Cambrex Plan (the Cambrex Pension Plan), resulting in one Plan and one Trust." (Id. at 39.)  Finally, Article X covers the grievance procedure, which includes arbitration.  The grievance provision in the 1997 CBA covers "[a]ny grievance arising between an employee or Union and the Company involving the meaning or application of this Agreement." (Id., at 19, Ex. 1, Art. X, Sec. 2.)

       The CasChem Plan documents also address disability benefits.  Section 5.4, "Disability Retirement Benefit," states: "A Participant who is retired on his Disability Retirement Date is entitled to a Disability Retirement Benefit equal to his Normal Retirement Benefit, calculated in accordance with Section 5.1 to the date of his Disability Retirement Date, but not reduced to reflect the early commencement of benefits." (Id., Ex. 2, Retirement Plan for Non-Salaried Employees of CasChem, Inc., Bayonne Plant, at 25.)  "Disability Retirement Date" is defined in the Plan in Section 1.24 as

> the first day of the calendar month nearest the Participant's request to be retired under a Disability Retirement Benefit, provided he is (a) covered under the Plan and has completed at least 10 Years of Vesting Service at the time such request is made, and (b) eligible for and receives Social Security disability benefits or satisfies the requirements for, and is receiving disability benefits under, the Long Term Disability Plan.

(Id. at 11.)  Section 1.50 defines a "Participant" as "any Eligible Employee who becomes a Participant in the Plan pursuant to Article 3, and shall include any individual who has separated from service or ceased to be an Eligible Employee and for whom benefits are still payable from

this Plan, either currently or at some future date." (Id. at 14.)

The individual plaintiffs claim an entitlement to Disability Retirement Benefits from Defendants. Plaintiffs assert that the entitlement to these benefits stems from the 1997 CBA and assert that the Disability Retirement Benefit vested prior to CasChem's sale of the Bayonne plant as a result of their ten plus years of service with CasChem. (Compl. ¶ 67.) CasChem denies that the individual plaintiffs are due Disability Retirement Benefits, arguing that these individuals are not "covered under the Plan" since they were not employed with CasChem when they became disabled. Defendants also assert that the matter is not subject to arbitration.

## II.     DISCUSSION

Count I of the Complaint, brought pursuant to § 301 of the Labor Management Relations Act ("LMRA"), alleges that "[t]he Company's refusal to provide disability pensions is a violation of the 1997 CBA." (Id. at ¶ 73.) It also asserts that "[t]he Company is required to arbitrate with the Union the dispute over the disability pensions." (Id. at ¶ 74.) Defendants argue that Count I must be dismissed either because the contract has expired, so there is no claim under the LMRA for violation of the contract, or because the right to relief can only be determined by the terms of the CasChem Plan which they argue does not cover Plaintiffs. Additionally, Defendants argue that the Union lacks standing to pursue the claim in Count I because this claim is really a claim for ERISA benefits, for which the Union may not bring suit on behalf of its members. On the other hand, Plaintiffs argue that their rights to a Disability Retirement Benefit vested prior to expiration of the 1997 CBA, and that "[t]here is no question that Exhibit D, Section 2C of the 1997 CBA governs the eligibility requirements for a disability pension, although the Union and the Company disagree as to what those requirement[s] are." (Pls.' Reply Br. in Supp. of Cross-

Mot. to Remit to Arbitration [hereinafter "Pls.' Reply"], at 1.)  They also argue that, under the 1997 CBA, receipt of a Deferred Vested Benefit does not preclude eligibility for a Disability Retirement Benefit.  (Compl. ¶ 61.)  Plaintiffs further argue that any disagreement over the meaning of the 1997 CBA is subject to the CBA's grievance procedures, including arbitration.

A.      Motion to Compel Arbitration

"[T]he question of arbitrability–whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance–is undeniably an issue for judicial determination." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).  In evaluating whether an issue is subject to arbitration a court must "inquir[e] into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). "When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability[;] '[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  Id. (quoting AT&T Techns., 475 U.S. at 650).  Any "[d]oubts should be resolved in favor of coverage."  USW, AFL-CIO-CLC v. Rohm & Haas Co., 522 F.3d 324, 331 (3d Cir. 2008) (internal quotations omitted).  Additionally, once a court has determined that arbitration is required, "any further matters surrounding the dispute are to be submitted to the arbitration procedure."  Bell Atl.-Pa. v. Commc'n Workers, Local 13000, 164 F.3d 197, 201 (3d Cir. 1999); see also AT&T Techns., 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

Here, Defendants do not dispute "that an arbitration agreement existed as part of the grievance procedure contained in the 1997 CBA." (Defs.' Br. in Opp'n to Pls.' Cross-Mot. to Remit Count I of the Compl. to Arbitration [hereinafter "Defs.' Opp'n"], at 3.)  They also do not dispute that the provision "is broad and thus supports a presumption in favor of arbitration of those matters covered by the 1997 CBA."  (Id. at 5.)  The issue here is whether the 1997 CBA, which expired in 2004, is enforceable, and if so, whether the present dispute falls within the scope of its arbitration provision.

    1.    Expiration

"[A]n arbitration clause does not generally continue in effect after a CBA expires." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 159 n.15 (3d Cir. 1999) (citing Litton Fin. Printing Div. v. NLRB. 501 U.S. 190, 204 (1991)).  But, where a dispute arises under an expired agreement, the duty to arbitrate continues to be in effect unless it is "negated expressly or by clear implication."  Nolde Bros. v. Bakery & Confectionery Workers Union, 430 U.S. 243, 255 (1977); see also Durham Life Ins., 166 F.3d at 159 n.15.  In Litton, the Supreme Court reaffirmed this Nolde holding and stated:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

501 U.S. at 205-06.  Thus, for postexpiration disputes, the "inquiry is . . . two-pronged[:] [a court] must determine if the particular dispute 'has its real source in the contract,' and if so, [a court] must consider whether postexpiration arbitration of the issue was negated expressly or by clear implication."  UPS v. Union de Tronquistas De P.R., Local 901, 426 F.3d 470, 473, 475

(1st Cir. 2005) (quoting Litton, 501 U.S. at 205, and holding that a vacation pay dispute had to be arbitrated). There is no argument here that the 1997 CBA addressed the issue of postexpiration arbitration.

Defendants argue that the claims in this case arose and the disabilities occurred well after the expiration of the 1997 CBA and the termination of their employment by CasChem. Therefore, they argue that "CasChem no longer had any obligation under that agreement"–period. (Defs.' Br. in Supp. of Their Mot. to Dismiss Counts I & III of the Compl., to Stay Disc., & Stay the Time to Ans. as to Count I [hereinafter "Defs.' Mot. to Dismiss Br."], at 11.) Plaintiffs, relying on Litton, argue that Defendants took an action–denial of benefits–after expiration of the 1997 CBA which infringes on a right that had vested under the agreement. In response to Plaintiffs' reliance on Litton to support their position that an arbitration provision in an expired agreement can be enforceable in certain circumstances, Defendants simply state: "Clearly, a collective bargaining agreement negotiated in 1997, which expired at the latest in 2004, does not have perpetual efficacy." (Defs.' Opp'n, at 4.) However, as Litton and other cases make clear, the efficacy of an arbitration provision in an expired agreement is not determined by some amount of time but rather by looking at the dispute and determining whether it arose under the contract.

If the individual plaintiffs' rights vested under the 1997 CBA, then the dispute is subject to arbitration so long as the particular dispute falls within the scope of the arbitration provision, as discussed below. Plaintiffs assert that their rights vested prior to expiration of the 1997 CBA. As noted above, Section 2C of Exhibit D of the 1997 CBA provides: "An Employee shall be retired at his request under a disability retirement provided he is covered under the Plan with at

least ten (10) years of Company service and also is eligible and receives Social Security Disability Benefits." (Id., Ex. 1, 1997 CBA, at 40.)  It is undisputed that each individual plaintiff had ten years of service prior to the expiration of the 1997 CBA.  Plaintiffs also argue that retirement benefits are exactly the type of benefits which are accrued during a period of employment and then are expected to be paid after employment terminates and agreements expire.  (See Pls.' Br. in Supp. of Cross-Mot. to Remit to Arbitration [hereinafter "Pls.' Cross Mot."]], at 9 (citing Cleveland Elec. Illuminating Co. v. Util. Workers Union, 440 F.3d 809, 816 (6th Cir. 2006) ("[T]he presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their [CBA] . . . .").)

      Although not clearly stated, Defendants appear to argue that, because the disabilities undisputedly did not occur prior to expiration of the agreement and while the individual plaintiffs were employed by CasChem, plaintiffs' rights did not vest prior to expiration of the agreement. They argue that the individual plaintiffs also must have become disabled while they were employed by CasChem  in order to be eligible for the Disability Retirement Benefit.  Thus, the parties appear to dispute whether the rights vested under the 1997 CBA; this, in essence, is also the ultimate question posed in Count I.  In other words, to decide that the rights are not vested because Section 2C of Exhibit D of the 1997 CBA requires the disability to have occurred during the period of employment, or vice versa, is to also decide the question posed by Count I.  Given this and the general rule that a court is not to look to the underlying merits of a dispute in deciding if arbitration is required, the question then is whether this Court must look into the merits of the vesting dispute to determine if the rights claimed had in fact vested prior to expiration of the 1997 CBA.

In Nolde "the [Supreme] Court held that the need to construe [a] lapsed agreement to determine if [a] grievance has merit–even if the necessary interpretation involves answering the query whether the asserted right vested under the CBA or survived its termination– is enough to require arbitration." Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers Int'l Union, 28 F.3d 347, 353 (3d Cir. 1994) (discussing Nolde, 430 U.S. at 249-52). On the other hand, in "Litton [the Supreme Court] held that a court has the *duty* to reach the merits of the claim, and can order arbitration only if it concludes that the lapsed CBA in fact creates the right or obligation at issue." Id. at 354 (emphasis in original) (discussing Litton, 501 U.S. at 209). But, the Litton Court also stated that it was not overruling Nolde. Id. at 353-54 (citing Litton). As a result of this seeming inconsistency, the Third Circuit in Luden's found that Nolde and Litton "are in tension." Id. at 353. After recognizing this tension, the Luden's Court noted that "other courts have uniformly resolved this tension by reading Litton as having impliedly overruled the portion of Nolde holding that a court answering the arbitrability question is not to look to the merits of the underlying claim." Id. at 354. But, the Third Circuit also stated that it was "reluctant to follow their course," and ultimately decided that it need not resolve this question because, under the facts in that case, it found that arbitration was required under an implied-in-fact CBA. Id. Here, there are no facts of an ongoing relationship between the Union and CasChem, so no evidence supports a finding of an implied-in-fact CBA. Thus, this Court must decide whether it is appropriate to look into the merits of the underlying claim in resolving the vesting question.

The issue which Plaintiffs seek to arbitrate is whether they have rights to a Disability Retirement Benefit for their period of employment with CasChem under the 1997 CBA. As

noted above, the arbitration question, with regard to the expired CBA, is whether the Disability Retirement provision, Section 2C of Exhibit D of the 1997 CBA, requires something more than years of service for purposes of vesting. In deciding this question, this Court would have to determine whether such rights exist at all and what requirements trigger that right. Answering those questions will require more than merely interpreting portions of the 1997 CBA; it will require this Court to decide the ultimate issue in Count I, making arbitration moot. In this sense, this case is different than Litton. In Litton the Supreme Court found that rights under a layoff provision, requiring all layoffs to proceed in inverse order of seniority, which involved factors that changed over time, were rights that "cannot be said to vest or accrue or be understood as a form of deferred compensation." 501 U.S. at 210. The Court contrasted this provision with the severance pay at issue in Nolde, which it viewed as a form of deferred compensation. Id. at 209-10. In making this determination, the Litton Court contemplated the types of things the arbitrator would have to decide, such as "aptitude and ability . . . and any unenumerated 'other factors.'" Id. at 210. The vesting question, therefore, was different than the ultimate question posed–the appropriate order of layoffs under the agreement.

      This Court, reading Litton in conjunction with the Third Circuit's statement in Lunden's that it was reluctant to view Litton as overruling Nolde, finds that, where the vesting question and the issue raised in the claim are essentially the same, a court is required to look into the underlying merits only in so far as to determine if the rights at issue are of the type that vest. Requiring more, in a case like this, would defeat the purpose of arbitration provisions and be contrary to the general presumption favoring arbitration of issues that have their basis in the contract with the arbitration provision. The 1997 CBA clearly creates some right or obligation to

a Disability Retirement Benefit–the right at issue in the case.  And, retirement benefits are the types of rights that generally vest or accrue based on the length of employment service–the types of rights that generally represent continuing obligations.  Therefore, the Court finds that if the dispute is within the scope of the 1997 CBA's grievance provision, as discussed below, arbitration is required.

  2. Scope of Arbitration Clause

Plaintiffs argue that "nothing in the 1997 [CBA] limits the scope of what is arbitrable." (Pls.' Cross-Mot., at 4.)  They argue that the dispute in this case is over the eligibility requirements under Section 2C of Exhibit D of the 1997 CBA, specifically the meaning of "covered under the Plan."  Defendants argue that "to be 'covered under the Plan' depends on the terms of the CasChem Plan, and the CasChem Plan's terms control the entitlement to benefits." (Defs.' Mot. to Dismiss Br., at 13.)  Defendants assert that all the terms relevant to Plaintiffs' claims are defined in the CasChem Plan, and, that under those definitions, to be eligible for disability benefits, a person must be an employee at the time they become disabled.  Thus, Defendants argue that disputes over the meaning of the CasChem Plan, an ERISA plan, does not fall within the scope of the 1997 CBA's arbitration clause.  Plaintiffs disagree, asserting that their claim in Count I is brought pursuant to the disability retirement provision in the 1997 CBA, that any terms in the CasChem plan cannot change the rights conferred in the 1997 CBA, and that "[b]y adding the third requirement of present employment at the time of disability, . . . [CasChem] has [impermissibly] unilaterally modified the 1997 [CBA]."  (Pls.' Cross Mot., at 3.)

Both parties cite to Rohm & Haas in support of their positions.  The issue in Rohm & Haas was whether

> an employee's challenge to a denial of disability benefits under a plan adopted by an employer pursuant to the Employee Retirement Income Security Act ("ERISA'), 29 U.S.C. § 1001 et seq., [was] subject to the grievance procedure, including arbitration, contained in a separate collective bargaining agreement (the "CBA") negotiated between the employer and its workers.

522 F.3d at 326.[1]  Like here, "the Company refused to arbitrate [the] grievances, arguing that any challenge to a denial of benefits under the Plan had to be made pursuant to the appeal procedure contained in the Plan itself." Id. at 327.  Even though the Third Circuit found the arbitration provision in the CBA broad and a presumption of arbitrability applicable, it nevertheless agreed with the defendant that the dispute was not subject to the arbitration provision, holding that "[b]ecause there is no specific language addressing the employees' rights to disability benefits [in the CBA], we cannot say such benefits were provided for under the terms of the . . . CBA." Id. at 332.  The Rohm & Haas Court noted that the CBA did not reference the Plan and it "[did] not . . . have an article devoted to disability benefits nor [did] it provide any sort of discussion as to the employees' rights to or calculations regarding such benefits." Id. at 332, 335.  Thus, it held that "[t]he employees' right to receive disability benefits instead derives from the Plan [not the CBA]." Id. at 334.  The Court further stated that "[b]ecause the Plan provides the basis for the employees' right to receive disability benefits, these rights cannot be said to result from any agreement entered into between the Union and the Company." Id.

---

[1] Defendants also argue "even if the corporate Defendant were bound by a CBA . . . the corporate Defendant and the CasChem Plan are separate and distinct legal entities." (Defs.' Mot. to Dismiss Br., at 14 (citing ERISA rules)). They argue that the CBA cannot divest the CasChem Plan of its interpretive function.  As Rohm & Haas makes clear, if the Plan is established by or incorporated into the CBA, the CBA may govern tehmethod for dispute resolution if the dispute falls within the scope of its arbitration provision.

> Following Rohm & Haas,
>
> there is no right to arbitration of ERISA benefits under a CBA unless the ERISA benefits sought are either: (I) derived directly from an ERISA plan established and maintained by or incorporated into a CBA whose grievance procedure contains an arbitration clause, or (ii) created by a separate ERISA plan and that plan and/or the CBA provide that adverse benefit determinations by a plan administrator are subject to the CBA's grievance procedure that includes arbitration.

Id. at 326-27.  Defendants argue that the facts here are similar to those in Rohm & Haas.  They argue that like in that case, the CasChem Plan was not established by the CBA "nor can it colorably be argued that the CasChem Pension Plan is incorporated by reference into the 1997 CBA."  (Defs.' Opp'n, at 7.)  However, as even Defendants point out, unlike in Rohm & Haas, the 1997 CBA references the CasChem Plan.  Defendants state: "The first reference in the 1997 CBA to the CasChem Pension Plan appears in Article II, Duration of Agreement."  (Id.)  The CasChem Plan is also referred to in Exhibit C of the 1997 CBA, which provides that "the Retirement Plan for Non-Salaried Employees of CasChem Inc. (the Hourly Pension Plan) will be merged into [the] Retirement Plan for Salaried Employees of [the] Cambrex Plan (the Cambrex Pension Plan), resulting in one Plan and one Trust."  (Compl., Ex. 1, at 39.)  Also unlike in Rohm & Haas, the 1997 CBA has a specific disability retirement provision.

Despite these differences between this case and Rohm &Haas, the only case relied on by Defendants to support their scope argument, Defendants argue that the CasChem Plan is a stand alone document.  To support this position they make arguments *interpreting* the 1997 CBA.  For example, relying on the language in Article II of the 1997 CBA, which provides that "[t]he provisions of [the Pension] Agreements shall be conclusive for its duration as to all bargainable matters," Defendants argue:  "The plain language of [Article II] is susceptible to only one

meaning: the CasChem Pension Plan is not incorporated by reference into the 1997 CBA but rather was intended as a stand-alone plan whose terms and provisions 'shall be conclusive.'" (Defs.' Opp'n, at 8.) They state: "This *interpretation* is further supported by the language of Article XII, Section 3, of the 1997 CBA, which describes the medical benefits available to employees . . . ." (Id. (emphasis added) (discussing the differences in detail between the two sections of the 1997 CBA).) Specifically with respect to Disability Retirement Benefits, Defendants argue that the language in Section 2C of Exhibit D of the 1997 CBA "does not suggest, as plaintiffs argue, that their claim for benefits invokes the terms of the 1997 CBA but rather compels the opposite conclusion[;] [i]n order to be eligible for disability pension benefits, the 'Employee' must be 'covered under the Plan.'" (Id. at 9-10.) They assert that "[t]he only reasonable conclusion to be drawn from the above *language from the 1997 CBA*, especially when read in conjunction with the language in Article II [of the CBA], is that the CasChem Pension Plan document stands on its own and governs the participants' entitlement to benefits." (Id. (emphasis added).) In fact, in making their interpretation arguments, Defendants refer primarily to the language in the 1997 CBA disability provision, not the CasChem Plan's parallel disability retirement provision. Defendants focus on who is an "employee" "covered under the Plan." The CasChem Plan's definition of Disability Retirement Date, unlike the 1997 CBA's eligibility provision, does not use the term employee, but instead uses the word Participant. Participant is defined in the CasChem Plan as "any Eligible Employee who becomes a Participant in the Plan pursuant to Article 3, and shall include any individual who has separated from service or ceased to be an Eligible Employee and for whom benefits are still payable from this Plan, either currently or at some future date." (Compl., Ex. 2, at 14.) Defendants do not discuss this,

focusing on the language in the 1997 CBA. (See Defs.' Opp'n, at 9-10.) Despite these arguments focused on the interpretation of the 1997 CBA, Defendants conclude that "[t]he adjudication of plaintiffs' claims rests not on an interpretation of the 1997 CBA but solely on an interpretation of the language of the CasChem Pension Plan." (Id. at 11.)

This Court agrees with Plaintiffs that the 1997 CBA provides the underlying basis for their right, if any, to receive disability retirement benefits; the facts of Rohm & Haas are distinguishable from this case. Here, the 1997 CBA has a Disability Retirement Benefit provision, the 1997 CBA references the CasChem Plan, the obligation for the disability pension benefits arises from the 1997 CBA (even if the CasChem Plan plays a part in giving form to that obligation), and, as Defendants' arguments make clear, resolution of the dispute, at least in part, will require interpretation of the 1997 CBA. See also Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 170 (3d Cir. 1999) ("[W]e previously held that arbitration should go forward before resolution of the plaintiff's [ERISA] claims . . . where the employer's duty to make contributions under the plan was dependent on the interpretation of a collective bargaining agreement."). Additionally, with respect to Defendants' argument that receipt of a Deferred Vested Benefit under the CasChem Plan precludes entitlement to a Disability Retirement Benefit, the Court also finds that interpretation of the 1997 CBA is necessary. The 1997 CBA's Disability Retirement benefit provision does not directly address this issue. Therefore, interpretation of the CBA's provision will be necessary to determine if the disability retirement benefit was meant to be limited by receipt of such a benefit. For these reasons, this Court finds that the present dispute is within the scope of the 1997 CBA's broad arbitration provision; Plaintiffs' motion to compel arbitration of Count I is granted, and the proceedings on the other ERISA claims are stayed

pending the arbitration outcome.

### B. Defendants' Motion to Dismiss

Because this Court finds that arbitration of Count I is appropriate, it denies Defendants' motion to dismiss Count I. Because this Court stays the proceedings with regard to Count II and III, Defendants' motion to dismiss Count III is also denied. Defendants may refile their motion to dismiss after arbitration is complete.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' cross-motion to remit Count I to arbitration is granted, and proceedings on Counts II and III are stayed pending the outcome of the arbitration. Defendants' motion to dismiss is denied without prejudice to re-file upon completion of arbitration if appropriate.   An appropriate Order accompanies this Opinion.

DATED: November 10, 2009                                /s/ Jose L. Linares
                                                                        JOSE L. LINARES
                                                                        UNITED STATES DISTRICT JUDGE